1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOEL CORDERO FLORES,                          Case No.  1:24-cv-00561-KES-BAM

12                  Plaintiff,                      FINDINGS AND RECOMMENDATIONS
                                                    REGARDING PLAINTIFF'S MOTION FOR
13          v.                                      SUMMARY JUDGMENT

14   COMMISSIONER OF SOCIAL                         (Docs. 16, 20)
     SECURITY,
15
                  Defendant.
16

17                              **Findings and Recommendations**

18                                      **INTRODUCTION**

19          Plaintiff Joel Cordero Flores ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner") denying his applications for disability

21   insurance benefits under Title II of the Social Security Act and for supplemental security income

22   under Title XVI of the Social Security Act.  The matter is currently before the Court on the

23   parties' briefs, which were submitted without oral argument, to Magistrate Judge Barbara A.

24   McAuliffe for the issuance of findings and recommendations.

25          Having considered the briefing and record in this matter, the Court finds that the decision

26   of the Administrative Law Judge ("ALJ") is not supported by substantial evidence as a whole and

27   is not based upon proper legal standards.  Accordingly, it will be recommended that Plaintiff's

28   motion for summary judgment or remand be granted, the Commissioner's request to affirm the

                                                  1

1  agency's determination to deny benefits be denied, and that judgment be entered in favor of

2  Plaintiff Joel Cordero Flores.

3  **FACTS AND PRIOR PROCEEDINGS**

4          Plaintiff filed applications for disability insurance benefits and supplemental security

5  income in 2019.  AR 193-99, 204-10.   Plaintiff alleged he became disabled on August 6, 2018,

6  due to a liver condition, back pain, left eye problems, and rheumatoid arthritis in left hand.  AR

7  246.  Plaintiff's applications were denied initially and on reconsideration.  AR 82-86, 90-94.

8  Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ James

9  D. Wascher issued an order denying benefits on November 30, 2020.  AR 13-28, 34-59.

10  Thereafter, Plaintiff sought review of the decision, which the Appeals Council denied.  AR 1-5.

11  Plaintiff appealed.

12          On January 6, 2022, following the parties' stipulation, the Court remanded the matter for

13  further administrative action.  AR 595-96.  Based on the Court's order, the Appeals Council

14  remanded the matter to an ALJ with instructions.  AR 601-03.  Following a hearing, ALJ Nancy

15  M. Stewart issued an order denying benefits on July 5, 2023.[1]  AR 497-513, 521-51.  Thereafter,

16  Plaintiff sought review of the decision, which the Appeals Council denied, making the ALJ's

17  decision the Commissioner's final decision.  AR 490-95.  This appeal followed.

18          **Relevant Hearing Testimony and Medical Record**

19          The relevant hearing testimony and medical record were reviewed by the Court and will

20  be referenced below as necessary to this Court's decision.

21          **The ALJ's Decision**

22          On July 5, 2023, using the Social Security Administration's five-step sequential

23  evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security

24  Act.  AR 503-13.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful

25  
26  [1] Plaintiff filed a subsequent claim for Title II and Title XVI benefits on July 27, 2021.  The state agency found Plaintiff disabled as of December 1, 2020.  AR 504.  ALJ Stewart dismissed

27  Plaintiff's request for hearing as it related to the period on or after December 1, 2020, and indicated that consideration of Plaintiff's claims was limited to the period ending November 30,

28  2020.  AR 504.

1 activity since August 6, 2018, the alleged onset date. AR 506. The ALJ identified the following

2 severe impairments: left eye blindness secondary to glaucoma, disorder of the spine, hepatitis C,

3 and liver cirrhosis. AR 506. The ALJ determined that Plaintiff did not have an impairment or

4 combination of impairments that met or medically equaled any of the listed impairments. AR

5 507. Based on a review of the entire record, the ALJ found that Plaintiff retained the residual

6 functional capacity ("RFC") to perform light work, except for the following restrictions: He

7 could lift and carry no more than 20 pounds occasionally and 10 pounds frequently. He could

8 push and pull within those weight limits, but could not climb ladders, ropes, and scaffolds. He

9 could stand or walk for 6 hours in an 8-hour workday and had no sitting limitations with normal

10 breaks and lunch periods of 10 to 15 minutes every 2 hours. He could occasionally climb ramps

11 and stairs and could frequently stoop, kneel, crouch, and crawl. He had monocular vision and due

12 to his problems with depth perception could not work at unprotected heights or around fast

13 moving dangerous mechanical parts or machinery. He should not drive commercial vehicles or

14 do work that requires work on slippery or uneven terrain. He could read small print, ordinary

15 newsprint, "book, print," read a computer screen, and could determine the difference in shape and

16 color of small objects. AR 507-11. With this RFC, the ALJ determined that Plaintiff was unable

17 to perform any past relevant work, but there were other jobs that existed in the national economy

18 that Plaintiff could perform, such as marker, routing clerk, and router. AR 511-13. The ALJ

19 therefore concluded that Plaintiff had not been under a disability from August 6, 2018, through

20 the date of the decision. AR 513.

21 **SCOPE OF REVIEW**

22      Congress has provided a limited scope of judicial review of the Commissioner's decision

23 to deny benefits under the Act. In reviewing findings of fact with respect to such determinations,

24 this Court must determine whether the decision of the Commissioner is supported by substantial

25 evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla,"

26 *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

27 *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a

28 reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

1  The record as a whole must be considered, weighing both the evidence that supports and the

2  evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995

3  (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the

4  proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This

5  Court must uphold the Commissioner's determination that the claimant is not disabled if the

6  Commissioner applied the proper legal standards, and if the Commissioner's findings are

7  supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d

8  509, 510 (9th Cir. 1987).

9  **<u>REVIEW</u>**

10  In order to qualify for benefits, a claimant must establish that he or she is unable to engage

11  in substantial gainful activity due to a medically determinable physical or mental impairment

12  which has lasted or can be expected to last for a continuous period of not less than twelve months.

13  42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental

14  impairment of such severity that he or she is not only unable to do his or her previous work, but

15  cannot, considering his or her age, education, and work experience, engage in any other kind of

16  substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882

17  F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v.*

18  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

19  **<u>DISCUSSION</u>**[2]

20  Plaintiff argues that: (1) the ALJ's RFC determination is unsupported by substantial

21  evidence as she failed to comport with the remand order and properly assess Plaintiff's visual

22  limitations and the medical opinions regarding his limitations; and (2) the ALJ failed to include

23  work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's

24  limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints. (Doc. 16

25  at 3.)

26  _____

27  [2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider

28  the argument or brief.

1    **A.    Evaluation of Visual Limitations**

2        Plaintiff argues that the ALJ failed to properly assess the opinions of the state agency

3    medical consultants and their opinions regarding Plaintiff's visual impairment.  (Doc. 16 at 5.)

4        Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the

5    agency's newer regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R.

6    §§ 404.1520c, 416.920c.  Under these regulations, the Commissioner does "not defer or give any

7    specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

8    administrative medical finding(s), including those from [a claimant's] medical sources." 20

9    C.F.R. §§ 404.1520c(a), 416.920c(a).  The Commissioner evaluates the persuasiveness of the

10   medical opinions based on the following factors: (1) supportability; (2) consistency; (3)

11   relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence

12   showing a medical source has familiarity with the other evidence in the claim or an understanding

13   of our disability program's policies and evidentiary requirements."  20 C.F.R. §§

14   404.1520c(c)(3)(1)-(5), 416.920c(c)(3)(1)-(5).  Supportability and consistency are the most

15   important factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability means the extent

16   to which a medical source supports the medical opinion by explaining the "relevant ... objective

17   medical evidence." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Woods v. Kijakazi*, 32

18   F.4th 785, 792 (9th Cir. 2022).  Consistency means the extent to which a medical opinion is

19   "consistent ... with the evidence from other medical sources and nonmedical sources in the

20   claim."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792.

21       The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an

22   examining or treating doctor's opinion as unsupported or inconsistent without providing an

23   explanation supported by substantial evidence."  *Id.* at 792. "The agency must 'articulate ... how

24   persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. §

25   404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in

26   reaching these findings, *id.* § 404.1520c(b)(2)."  *Id.*; *see also* 20 C.F.R. § 416.920c(b).

27

28

5

<u>Prior Administrative Medical Findings</u>[3]

Upon initial review, Dr. Robert Friedman, the state agency medical consultant, found that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, could never climb ramps, stairs, ladders, ropes, or scaffolds, could frequently balance, stoop, kneel, crouch, and crawl, and did not have any manipulative, visual, communicative, or environmental limitations.  AR 65-66.

On reconsideration, Dr. P. Frye similarly opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, could never climb ramps, stairs, ladders, ropes, or scaffolds, could frequently balance, stoop, kneel, crouch, and crawl, and did not have any manipulative, communicative, or environmental limitations.  AR 76-78.  However, Dr. Frye additionally opined that Plaintiff had visual limitations with limited near and far acuity on the left, limited depth perception on the left, limited color vision on the left, and limited field of vision on the left.  AR 77.

In evaluating these findings, the ALJ reasoned as follows:

> I did not find persuasive . . . the opinions of the state agency medical consultants, who indicated that the claimant could perform work at the less than medium exertional level due to multiple exertional postural, visual, and environmental limitations (Ex. 1A/7-9; 3A/7-9).  The state agency medical consultants did not examine the claimant, and so did not benefit from first-hand knowledge and experience with his condition.  They also did not have access to the additional medical evidence and testimony available at the hearing level.  As a result, they overestimated his functional abilities, especially about his exertional abilities.  A detailed assessment of the claimant's condition explaining how they came to the identified limitations and citing medical evidence in support of their conclusions does not accompany their opinion.  In addition, their opinion fails to account for the impact of the claimant's treatment for hepatitis C and liver cirrhosis during the period in question, or for his complaints of abdominal pain related to this condition . . . .  As a result, I did not incorporate the opinions of the state agency medical consultants into the above residual functional capacity.

AR 510.

---

[3] Prior administrative medical findings are findings made by State agency medical consultants and psychological consultants at a prior level of review based on their review of the evidence in the record.  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

1    In this case, the Appeals Council directed the ALJ to reevaluate the prior administrative

2 findings and the claimant's visual limitations, noting that the prior decision did not adequately

3 address prior administrative findings from Dr. Frye concerning Plaintiff vision in the left eye.  AR

4 601-02.  While acknowledging that the ALJ reevaluated Dr. Frye's opinion in the new decision,

5 Plaintiff argues the ALJ failed to properly address the opined visual limitations, and her failure to

6 do so was erroneous.  (Doc. 16 at 5-6.)

7    The Commissioner counters that the ALJ addressed Plaintiff's visual limitations and

8 generally found Dr. Frye's findings to be unpersuasive under the supportability and consistency

9 factors.  Because the ALJ found Dr. Frye's prior administrative medical findings unpersuasive,

10 the Commissioner contends that the ALJ was not required to incorporate the limits therein into

11 the RFC.  (Doc. 20 at 6.)

12    The Court finds that the ALJ did not properly evaluate Dr. Frye's visual limitations under

13 the consistency and supportability factors in the regulations.  When considering the supportability

14 factor, the ALJ should consider the extent to which a medical source supports his or her own

15 opinion and explains the relevant objective medical evidence.  *Beltran v. Kijakazi*, No. 1:21-cv-

16 0603 JLT BAM, 2023 WL 6164105, at *4 (E.D. Cal. Sept. 21, 2023) (citing 20 C.F.R. §

17 416.920c(c)(1)); *see also* 20 C.F.R. § 404.1520c(c)(1).  The ALJ here noted that the state agency

18 consultants did not examine Plaintiff and did not provide "[a] detailed assessment of the

19 claimant's condition explaining how they came to the identified limitations and citing medical

20 evidence in support of their conclusions does not accompany their opinion."  AR 510.  However,

21 the ALJ did not acknowledge that Dr. Frye's opinion regarding Plaintiff's visual limitations cited

22 an assessment of "OS glaucoma w/ VA loss but adequate ID vision."  AR 74.  Further, the ALJ

23 did not acknowledge that in rating Plaintiff's visual limitations, Dr. Frye explained that they were

24 based on "OS LP due to glaucoma."  AR 77.  Therefore, the Court finds that the ALJ failed to

25 properly address the supportability factor with respect to the opined visual limitations.

26    Furthermore, the ALJ did not clearly address the consistency factor, which requires the

27 ALJ to explain the extent to which the limitations identified by Dr. Frye are inconsistent with

28 other evidence in the record, including the opinions from other medical sources and nonmedical

7

1    evidence. *Beltran*, 2023 WL 616405, at *5 (explaining that consistency factor "requires the ALJ

2    to explain the extent to which the limitations identified by [the medical source] are inconsistent

3    with other evidence in the record, including the opinions from other medical sources and

4    nonmedical evidence"). Although the ALJ did note the state agency consultants "did not have

5    access to the additional medical evidence and testimony available at the hearing level," (AR 510),

6    the ALJ did not specify the additional evidence or testimony determined to be inconsistent with

7    Dr. Frye's assessed visual limitations. Indeed, the ALJ's evaluation primarily considered

8    Plaintiff's exertional limitations, noting that the state agency physicians "overestimated his

9    functional abilities, especially about his exertional abilities," and failed "to account for the impact

10   of the claimant's treatment for hepatitis C and liver cirrhosis during the period in question, or for

11   his complaints of abdominal pain related to this condition." AR 510. Consequently, the Court is

12   unable to find that the ALJ properly discussed the consistency factor, particularly with respect to

13   the opined visual limitations.

14           The Commissioner contends that a plain reading of the record demonstrates that the ALJ

15   nevertheless accepted the visual limitations in Dr. Frye's prior administrative medical findings.

16   (Doc. 20 at 6.) To that end, the Commissioner argues the ALJ accepted Dr. Frye's limitations in

17   the left eye in near and far acuity, depth perception, color vision, and field of vision, "by

18   incorporating Plaintiff's monocular vision and resulting depth perception problems into the

19   RFC." (*Id.*) The Commissioner cites the ALJ's explanation that due to Plaintiff's depth

20   perception issues, he could not work at unprotected heights or around fast moving dangerous

21   mechanical parts or machinery, and he also was prohibited from driving commercial vehicles or

22   doing work that required work on slippery or uneven terrain. (*Id.*, citing AR 508.)

23           Even accepting that the ALJ adequately incorporated Dr. Frye's limitation in depth

24   perception, it is unclear how the RFC accounted for Dr. Frye's limitations in near and far acuity,

25   color vision, and field of vision. The ALJ included in the RFC that Plaintiff "could read small

26   print, ordinary newsprint, book, print, read a computer screen, and can determine the differences

27   in shape and color of small objects." AR 508. However, this RFC does not appear consistent

28   with the above identified limitations in left eye near and far acuity, color vision, and field of

8

1    vision, and the ALJ did not provide an explanation as to how she determined Plaintiff retained the

2    visual capacity to read small print, ordinary newsprint, book, print, read a computer screen, or

3    determine the differences in shape and color of small objects.

4        The Commissioner argues that "the ALJ's finding that Plaintiff could read small print,

5    ordinary newsprint, book, print, and computer screen, and determine the differences in shape and

6    color of small objects, was derived from Dr. Stoltz's medical opinion (AR 844)."  (Doc. 20 at 7.)

7    This argument is not persuasive for two main reasons.  First, the ALJ did not discuss any of Dr.

8    Stolz's findings regarding Plaintiff's vision.  AR 510.  Indeed, with respect to visual limitations,

9    the ALJ merely acknowledged Dr. Stolz's opinion that Plaintiff "was essentially limited to work

10   at the less than medium exertional level due to multiple exertional postural, visual, and

11   environmental limitations." *Id.*  Second, and critically, the ALJ expressly "did not incorporate Dr.

12   Stolz's assessment into the above residual functional capacity."  *Id.*

13       The Commissioner additionally argues that these RFC limitations were supported by the

14   record, noting that Plaintiff could not see his fingers on the left side by July 2020, but during the

15   relevant period, he possessed between 20/40 and 20/70 vision on the right side, which was

16   corrected to 20/20 vision."  (Doc. 20 at 7-8.)  However, it is unclear how these findings support

17   the visual RFC.  Although the ALJ did state that the visual and environmental limitations in the

18   RFC adequately accommodated the limitations caused by Plaintiff's left eye blindness secondary

19   to glaucoma, the ALJ did not explain how the vision findings in the right eye supported an RFC

20   for reading small print, ordinary newsprint, book, print, and computer screen, and determining the

21   differences in shape and color of small objects given the limits with left near and far acuity, color

22   vision, and field of vision.

23       Based on the above, the Court finds that the ALJ failed to properly assess the prior

24   administrative medical findings regarding Plaintiff's visual limitations and the ALJ's RFC's

25   determination regarding his visual limitations is not supported by substantial evidence.  The Court

26   cannot conclude that this error is harmless.  *See Tomasetti v. Astrue*, 533 F.3d 1035, 1038 (9th

27   Cir. 2008) (explaining "harmless error, . . . exists when it is clear from the record that the ALJ's

28   error was inconsequential to the ultimate nondisability determination") (internal quotation marks

1    and citation omitted).  The ALJ relied on the vocational expert's testimony that Plaintiff could

2    perform other jobs in the national economy, but the only visual limitations in the hypotheticals

3    considered by the vocational expert were those for depth perception. *See* AR 512, 545.  Further,

4    the jobs of marker, routing clerk, and router identified by the vocational expert at step five of the

5    sequential evaluation involve, at a minimum, near acuity frequently.  AR 512; *see* Marker,

6    DICOT 209.587-034, 1991 WL 671802; Routing Clerk, DICOT 222.687-022, 1991 WL 672133;

7    Router, DICOT, 222.587.038, 1991 WL 672123.

8          **B.      Remedy**

9          Given the identified error, the Court must decide the appropriate remedy.  The decision

10    whether to remand for further proceedings or order an immediate award of benefits is within the

11    Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the

12    record has been fully developed and further administrative proceedings would serve no useful

13    purpose," remand for further proceedings is warranted. *Garrison*, 759 F.3d at 1020.  Here, the

14    record is not fully developed, and because it is not clear that "further administrative proceedings

15    would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also*

16    *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the

17    decision of the Commissioner of Social Security, with or without remanding the cause for a

18    rehearing, but the proper course, except in rare circumstances, is to remand to the agency for

19    additional investigation or explanation.") (internal quotes and citations omitted).

20          Having found that remand is warranted, the Court declines to address Plaintiff's remaining

21    argument regarding the evaluation of his subjective complaints, which can be addressed, as

22    necessary, on remand.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we

23    remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative

24    ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7

25    (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which

26    would provide plaintiff with any further relief than granted, and all of which can be addressed on

27    remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for

28    reconsideration of step three, we do not reach the other arguments raised.").

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.      Plaintiff's motion for summary judgment (Doc. 16) be granted.

2.      The Commissioner's request to affirm the agency's decision (Doc. 20) be denied.

3.      The Clerk of the Court be directed to enter judgment in favor of Plaintiff Joel Cordero Flores, and against Defendant Commissioner of Social Security

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). **Within fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __September 5, 2025__          ___/s/ Barbara A. McAuliffe___
                                        UNITED STATES MAGISTRATE JUDGE

11